# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7806 | **DATE** | 6/14/2000 |
| **CASE TITLE** | Bagley, Jr. vs. Lumbermens Mutual Casualty Co., et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss counts I-IV is denied and the motion is granted as to count V. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 15 2000 date docketed | 19 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 6/14/2000 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELLIS BAGLEY, JR. )
)
        Plaintiff, )
)
v. ) No. 99 C 7806
)
LUMBERMENS MUTUAL CASUALTY )
COMPANY, an Illinois )
corporation; AMERICAN MOTORISTS )
INSURANCE COMPANY, an Illinois )
corporation; AMERICAN )
MANUFACTURERS MUTUAL INSURANCE )
COMPANY, an Illinois )
corporation; AMERICAN )
PROTECTION INSURANCE COMPANY, )
AMERICAN MANUFACTURERS, an )
Illinois corporation, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Ellis Bagley is an African-American who has worked in the insurance industry since 1989. He has a J.D., an M.B.A., and an L.L.M. from Northwestern University. In 1996, he made a business proposal to the defendants, collectively referred to as the Kemper Group ("Kemper"), to create a "managing general agency" to underwrite contract surety bonds and offer a companion package insurance policy directed towards small law firms, to be called the "Barrister Protection Plan." During discussions a Kemper bond

underwriting officer suggested certain modifications. Under the terms of Mr. Bagley's final proposal, incorporating those changes, the plan provided that Kemper would lend $600,000 to a firm that Bagley would establish and act as the managing general agent.

In 1997, Kemper rejected the plan, giving as its reasons that: (1) it did not want to set up a competitive operation to its existing department that marketed to affinity groups, (2) it had a program under design for small law firms, and (3) it was not interested in providing certain kinds of professional liability coverage to law firms because of poor loss history. Mr. Bagley sued under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"), 42 U.S.C. § 1981, and several state law causes of action, alleging that Kemper denied him a loan and an opportunity to contract because of his race, and stole his business plan. Kemper moves to dismiss all counts of the complaint, and I deny the motion in part and grant it in part.

I.

A motion to dismiss is to be granted only if it appears that the plaintiff could prove no facts that would entitle him to relief. *Gutierrez v. Peters*, 111 F.3d 1364, 1368 (7th Cir. 1997). In deciding such a motion, I accept as true all well-pleaded allegations of the complaint and reasonable inferences that may be

drawn from them. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). The issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support the claims. "It may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Id.* (internal citation omitted).

The Equal Credit Opportunity Act makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . , on the basis of race [or] color." 15 U.S.C. § 1691(a)(1). Kemper argues that the ECOA claim must fail because (1) the Act does not apply to a proposed joint business venture, but only to consumer applicants for credit to financial institutions; (2) Kemper is not a "creditor" within the meaning of the Act, and (3) Mr. Bagley is not an "applicant."

These arguments will not wash. There is no limitation for commercial loans in the Act. By its plain terms, the statute applies to "any credit transaction." The Regulations are clear that the Act applies to all credit--commercial as well as personal. A list of exceptions does not provide any general exclusion for commercial credit transactions. *See* 12 C.F.R. § 202.3 ("Limited exceptions for certain classes of transactions."). As the maxim goes, *expressio unius est exclusio alterius*. Kemper cites no case

-3-

law to the contrary, and I can find none.

With respect to (2), Kemper argues that it is not a creditor because it is not regularly engaged in the business of providing credit. *See Latimore v. Citibank Federal Savings Bank*, 151 F.3d 712, 716 (7th Cir. 1998) (*citing* 12 C.F.R. S 202.2(1) (A creditor is "a person who, in the ordinary course of business, regularly participates in the decision of whether or not to extend credit.")). Mr. Bagley alleges that Kemper has lent $1 billion to one real estate developer, $35 million to a Chicago construction firm, has held hundreds of millions of dollars in residential mortgages, and has lent scores of millions of dollars to venture capitalists and insurance agents. Kemper disputes these allegations, but I must assume that they are true for the purposes of this motion, and they are sufficient to make Kemper a creditor within the meaning of the statute.

Finally, as to (3), Kemper's argument that Mr. Bagley was not an "applicant" because he sought the money for his prospective firm, not himself, is not supported by case law. If this were the law, a racist lender could refuse to lend to a business on the stated grounds that it was owned by an African-American applicant, and avoid liability. But the statute applies to commercial loans, and a creditor that refuses to lend to a business because of the

-4-

race of the applicant, e.g., a prospective partner or incorporator, would be in violation. Mr. Bagley has stated a claim for a violation of ECOA.

II.

Section 1981 protects the right of all persons in the United States to "make and enforce contracts." Kemper argues that Mr. Bagley has failed to show that the dispute here concerned "the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Morris v. Office Max*, 89 F.3d 411, 414-15 (7th Cir. 1996). Kemper says that the rejection of a proposed business plan is only a possible loss of a future contract opportunity. In *Morris*, however, the plaintiffs "never sought to enter into a contractual relationship with [the defendant]," *id.* at 414, but that is not the case here. A defendant cannot avoid § 1981 liability by refusing to contract with members of racial minorities who seek to contract with him, then arguing that there were no "actual loss of contract interests" involved. Kemper argues that the plan was too amorphous to be a contract proposal, but that does not seem to have been a criticism it had at the time, and as Mr. Bagley denies it was amorphous, I must accept his allegation here.

Kemper also argues that Mr. Bagley fails to make out a prima facie case because he failed to plead that there were similarly

situated persons outside the protected class who were treated more favorably. See *Bailey v. Northern Indiana Public Service Co.*, 910 F.2d 406, 410 (7th Cir. 1990) (Indirect burden shifting approach applies to § 1981 claims.). However, that showing is not required in all cases. In an employment context, the inference of discrimination arises in single-discharge ("mini-RiF") cases where the terminated employee's duties are absorbed by other employees not in the protected class, even without a showing that similarly situated employees were treated better. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000). Mr. Bagley's case may be plausibly analogized to a single-discharge employment case if the business opportunities he alleges it denied to him were offered to others not in the protected class. Mr. Bagley alleges that Kemper makes large scale loans to white-owned businesses that may be regarded as having absorbed the opportunities he would have had, and that will suffice for the *Bellaver* showing in this context and for purposes of a motion to dismiss.

Kemper contends, further, that if it were racist, it would not have entered into negotiations to lend Mr. Bagley money. It asks me to apply the "same actor inference" in a loan context. Under this theory, "where the same person does the hiring and firing of an

individual, an inference arises that the firing did not result from an improper discriminatory motive." *Johnson v. Zema Sys. Corp*, 170 F.3d 734, 744-45 (7th Cir. 1999)(employment context). It is not clear that the inference would be applicable in a case like this where the "same actor" did not actually offer a job or loan that it later refused to a person in the protected class. There are many reasons a racist lender might pretend to give consideration to an application from an African-American, for example, to create a paper impression that it was not engaged in discrimination. Even if the same-actor inference were applicable, though, it is "unlikely to be dispositive in very many cases [because the] inference is not itself evidence of nondiscrimination. It simply provides a convenient shorthand for cases in which a plaintiff is unable to present sufficient evidence of discrimination." *Id.* at 745. I cannot, therefore, conclude as a matter of law that merely because Kemper negotiated with Mr. Bagley that it did not discriminate against him in making contracts.

Finally, Kemper argues that Mr. Bagley has not shown that its nondiscriminatory reasons were pretextual. However, Kemper adequately replies to these reasons in his complaint (admittedly an unusual place to do it), where he alleges, first, that Kemper

provided managing general agent status to the white-owned Lou Jones Agency of Los Angeles, California, from 1985 to 1996, so it must have been interested in "outside" marketing affinity groups, contrary to what it told him in the denial letter. Kemper responds, in a footnote,[1] that it had no such relations in 1997, but it does not say whether that was because of the policy stated in the rejection letter, so on a motion to dismiss I must draw the inference in favor of Mr. Bagley and conclude that it was not. Second, Mr. Bagley argues that it is hard to square the proffered nondiscriminatory reasons that Kemper was not interested in setting up an outside competitor and had its own program about ready to go with Kemper's extensive negotiations with him. Third, Mr. Bagley alleges that Kemper did not begin selling liability insurance to small law firms until after the negotiations with him, which shows that he got it interested in the idea. Kemper denies this, also in a footnote, but I must accept Mr. Bagley's characterization of the facts for the purposes of this motion. Mr. Bagley has stated a claim for the violation of § 1981.

---

[1] Technically, this waives the argument. *See, e.g., Dresser Indus., Inc., Waukesha Engine Div. v. Gradall Co.*, 965 F.2d 1442, 1448 (7th Cir. 1992) (treating as waived an argument made only in a footnote).

## III.

I now turn to Mr. Bagley's state law claims. In count III, he argues that Kemper stole the ideas in his business plan, committing the state law torts of misappropriation and unfair competition. Kemper argues that these torts are effectively preempted by the Illinois Trade Secrets Act, 765 ILCS 1065/8, which by its terms is "intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." However, the Act only displaces *conflicting* laws that provide civil remedies for misappropriation of *trade secrets*. Mr. Bagley explains that in count III, he does not claim that his business plan constituted a trade secret, so he does not fall under the displacing or preemptive effect of the Act. In count IV, Mr. Bagley does allege that the plan constituted a trade secret, but he argues, correctly, that he is entitled to plead in the alternative at this stage of proceedings. Kemper offers no independent argument that Mr. Bagley has failed to make out a claim of misappropriation or unfair competition, so those counts stand.

The Illinois Trade Secrets Act does apply to the trade secrets claim (count IV). To establish a violation, Mr. Bagley must show

-9-

that the information at issue was, among other things, secret, that is, not generally known in the industry. *See Service Centers of Chicago, Inc. v. Minogue*, 535 N.E.2d 1132, 1136 (Ill. App. Ct. 1989) (defining "secret"). Kemper argues that Mr. Bagley's ideas were nothing more than an attempt to use an existing marketing vehicle--a managing general agency--to sell insurance policies to niche firms, and this idea was generally known in the industry. However, Mr. Bagley alleges that it was his particular business plan for the Barrister Protection Policy and related proposals that was confidential, not the general idea. Kemper responds that Mr. Bagley did not make it sign a confidentiality agreement before showing it the plan and that he admits showing it to another industry expert. Whether efforts to maintain confidentiality were sufficient is not a question that can be decided as a matter of law on the kind of factual allegations that govern a motion to dismiss. The answer:

> depends on a balancing of costs and benefits that will vary
> from case to case . . . . On the one hand, the more the owner
> . . . spends on preventing the secret from leaking out, the
> more he demonstrates that the secret has real value . . . and
> that there really was misappropriation. On the other hand,
> the more he spends, the higher his costs.

*Rockwell Graphic Sys., Inc. v. Dev Indus., Inc.*; 925 F.2d 174, 179-80 (7th Cir. 1991) (rejecting deciding whether efforts to protect

a trade secret were sufficient on summary judgment in all but "extreme cases"). This is not an extreme case.

Kemper objects, finally, that Mr. Bagley does not allege that he took any steps whatsoever to protect his supposed secret, but in federal court he does not have to. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) ("[H]eightened pleading standards" are contrary to the system of notice pleading.) Plaintiffs need not plead facts and may plead conclusions, so long as those conclusions provide defendants with minimum notice of the claim. *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995).

Mr. Bagley's final claim is that Kemper tortiously interfered with his prospective business advantage in rejecting his proposal. However, in Illinois, this tort is a triadic relationship: X must have a prospective business relationship with Y, in which Z interferes. *See Schuler v. Abbott Laboratories*, 639 N.E.2d 144, 147 (Ill. 1993). ("Plaintiff must also allege action by the interfering party directed towards the party with whom the plaintiff expects to do business."). The interference must be directed towards a "specific *third* party." *Id.* (emphasis added). Mr. Bagley alleges only a dyadic relationship, that Kemper interfered with Mr.

Bagley's prospective relationship with Kemper itself by refusing his application because of his race. This cause of action must therefore be dismissed.

I DENY Kemper's motion to dismiss counts I-IV, and GRANT its motion to dismiss count V.

ENTER ORDER: *Elaine E Bucklo*

Elaine E. Bucklo
United States District Judge

Dated: June 14, 2000

Copies are being mailed to:

Alan J. Mandel
Alan J. Mandel & Assoc., Ltd.
200 W. Adams Street, #2220
Chicago, IL 60606

Attorney for Plaintiff

Brian W. Burger
Meckler Bulger & Tilson
233 S. Wacker Drive
Chicago, IL 60606

Attorney for Defendants